[J-66-2014] [MO: Saylor, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 33 EAP 2013 |
| | : |
| Appellant | : Appeal from the Order of Superior Court |
| | : entered on February 5, 2013, at 1174 EDA |
| | : 2011, affirming the order of the Court of |
| v. | : Common Pleas of Philadelphia County, |
| | : Criminal Division, dated May 2, 2011 at |
| | : No. CP-51-CR-0012459-2008 |
| DENNIS BLAND, | : |
| | : ARGUED:  September 10, 2014 |
| Appellee | : |

**DECIDED:  May 26, 2015**

## DISSENTING OPINION

**MADAME JUSTICE TODD**

I consider Appellee's written request to the Philadelphia Police Department explicitly stating that he did not wish to be questioned by officers from that department without the assistance of an attorney, made after he was taken into custody in Florida to face a murder charge lodged by the Philadelphia Police Department, to be a valid invocation of his Fifth Amendment rights under the United States Supreme Court's landmark decision in Miranda v. Arizona, 384 U.S. 436 (1966); thus, in my view, investigators from that department were required to honor his request for the assistance of counsel before and during their subsequent questioning of him.  I further regard Edwards v. Arizona, 451 U.S. 477 (1981), as establishing a bright-line rule that police may not interrogate an individual being held in custody who has requested the assistance of counsel, until and unless counsel is provided to the individual.  Unlike the Majority, I do not view *dicta* contained in the high Court's later decision in McNeil v. Wisconsin, 501 U.S. 171 (1991), as undercutting the necessity of compliance by police

with this federal constitutional mandate. As it is not disputed that an employee of the Philadelphia Police Department disregarded Appellee's written request for the assistance of counsel during interrogation, from my perspective, Appellee[1] was unlawfully subjected to uncounseled interrogation by investigators from that department. Accordingly, I dissent from the Majority's decision to the contrary.[2]

In its historic Miranda decision, the United States Supreme Court recognized the necessity that police authorities inform an individual, who is being held in custody, of his or her right to consult with an attorney before police questioning begins, and also inform the individual who is being detained, prior to any questioning, of his or her right to have counsel present during any subsequent interrogation. Securing the right of an individual in the custody of the authorities to the assistance of counsel for coping with the process of custodial interrogation was deemed integral by the Court to protect the long-recognized basic right of every person, protected by the Fifth Amendment to the Constitution, not to be compelled to provide evidence against himself or herself. The Court observed that an individual who is taken into custody by police is held in isolation and cut off from all contact with the outside world, and that this deprivation of contact with traditional sources of support, such as family, friends, and community, makes the individual more susceptible to a variety of psychologically coercive interrogation

---

[1] Appellee was a juvenile at the time of his interrogation.

[2] Appellee also argues to our Court that Article I, Section 9 of the Pennsylvania Constitution independently protected his right to counsel in this situation, and the Majority rejects this claim. See Majority Opinion at 13. Because Article I, Section 9 affords at least as much protection of the right against self-incrimination as does the Fifth Amendment to the United States Constitution, given that the lower court decisions to exclude Appellee's confession were based entirely on their determinations that his Fifth Amendment rights were violated by the police, and because, as I explain *infra*, I consider their determinations to have been correct, I would find that Appellee was entitled to relief under the Pennsylvania Constitution as well.

techniques.  <u>Miranda</u>, 384 U.S. at 445, 448-58.  These techniques, the high Court found, can lead to false confessions.  <u>Id.</u> at 453, 455 n.24.[3]  Thus, to ensure that the free will of an individual being held in custody is not overborne by these compulsive pressures, such that he or she is unable to freely and intelligently exercise his or her Fifth Amendment rights, the Court required a detained individual be given access to counsel, upon request, both prior to and during police interrogation.  <u>Id.</u> at 470.

The high Court also made clear in <u>Miranda</u> that, once a person in custody makes a request for the assistance of counsel, police are not then permitted to interrogate him or her until counsel has been provided and the detained person is given the opportunity to both confer with the attorney, and, also, to have the attorney advise him or her during any subsequent police interrogation.  <u>Id.</u> at 474.  Notably, the Court did not place any restrictions on the manner in which an individual in custody could communicate a request to the police for the assistance of counsel for any subsequent interrogation in which the police might engage.  Hence, the written request by Appellee in this matter for the assistance of counsel for any police questioning, which indisputably was delivered to and received by the homicide unit of the Philadelphia Police Department — members of which subsequently interrogated Appellee — was acceptable under the tenets of <u>Miranda</u>.

Most significantly, the high Court in <u>Miranda</u> did not indicate that an individual who is in custody had to make a request for counsel *during* police interrogation, or within a specific time frame preceding that interrogation, in order for the police to be

---

[3]  As recently as 2009, the Court again recognized the vexing problem of false confessions by individuals held in custody, and their impact on our system of justice. <u>See</u> <u>Corley v. United States</u>, 556 U.S. 303, 321 (2009) (observing that the pressures of custodial interrogation "can induce a frighteningly high percentage of people to confess to crimes they never committed" (citing Drizin & Leo, <u>The Problem of False Confessions in the Post – DNA World</u>, 82 N.C.L.Rev. 891, 906–07 (2004))).

bound by the request.  Indeed, the Court indicated, as acknowledged by the Majority, a request for counsel made at "any stage" of the process must be honored by the police. See Miranda, 384 U.S. at 444-45 ("If, however, [an individual in custody] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.").  Moreover, the Court also specified that a request for the assistance of counsel made by an individual being held in custody at any time *prior* to the police beginning interrogation will be sufficient to guarantee the individual's right to consult with an attorney before interrogation commences, and the right to have the attorney present during that questioning.  See id., 384 U.S. at 470 ("An individual need not make a pre-interrogation request for a lawyer. *While such request affirmatively secures his right to have one*, his failure to ask for a lawyer does not constitute a waiver."   (emphasis added)).   Consequently, the Majority's present conclusion that a request for the assistance of counsel made by an individual being held in custody must take place "in close temporal proximity to" police interrogation in order for the police to be required to honor it, Majority Opinion at 12, finds no support in the Miranda decision itself, nor is it, in my view, compelled by the high Court's subsequent jurisprudence in this area.

A decade and a half after Miranda, the high Court, in Edwards v. Arizona, supra, reaffirmed the fundamental principle espoused in Miranda that "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation."  Edwards, 451 U.S. at 482.  In order to provide an additional safeguard against deprivation of that right occasioned by a failure of the custodial authority to honor a detained individual's request for counsel, the Court established a bright-line rule that, when an individual being held in custody has "expressed his [or her] desire to deal with the police only through counsel, *[he or she] is not subject to further interrogation by*

*the authorities until counsel has been made available to him [or her]*, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85 (emphasis added). The Court further held that any statements by an individual who is in custody, made in response to police questioning after the individual has requested the assistance of an attorney and before counsel is made available, are not admissible as evidence in a criminal trial unless it is clear that the detained individual, and not the police, voluntarily initiated the discussion. Id. at 485–87.

Although in Edwards the individual in custody made the request for counsel during an initial interrogation, and the police re-initiated questioning of him a day later without providing him with the opportunity to consult with an attorney, the high Court did not suggest that it was limiting its holding only to situations in which a request for counsel is first made during or in close temporal proximity to the time of interrogation. As the Court later explained, its ruling was founded on a fundamental presumption that, if a person in custody has requested the assistance of counsel for custodial interrogation and the request is disregarded, a purported waiver by that person of his or her Fifth Amendment rights made during any subsequent interrogation is, *ipso facto,* not the product of a genuinely free choice. Id. at 487; see also Montejo v. Louisiana, 556 U.S. 778, 787 (2009); McNeil, 501 U.S. at 177. The Court explicitly recognized that such a rule is necessary because individuals in custody who assert their Fifth Amendment rights are frequently pressured into surrendering them before their request to consult with counsel is honored. See Michigan v. Harvey, 494 U.S. 344, 350 (1990) (observing that the Edwards bright-line rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights."); Smith v. Illinois, 469 U.S. 91, 98 (1984) (*per curiam*) ("In the absence of such a bright-line

prohibition, the authorities through 'badger[ing]' or 'overreaching' — explicit or subtle, deliberate or unintentional — might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.").

Thus, as the broad scope of the above-quoted language from Edwards makes clear, in all situations where a detained individual has requested the assistance of counsel, police are not permitted to conduct any interrogation after the request is made — even if, as in the case at bar, it is an initial interrogation — unless they first provide the detained individual the opportunity to consult with counsel, and to have counsel present during the interrogation. As in Miranda, the Court in Edwards did not set forth any specific time period before an interrogation that the request for counsel must be made in order for the police to be required to comply with it.

Indeed, in Smith, supra, the high Court seemingly rejected any such interpretation of Miranda and Edwards. In that case, the appellant — Smith — was arrested, and, while being given Miranda warnings, requested the assistance of counsel. Although the ultimate issue the high Court decided was whether subsequent equivocation by Smith, in response to further police questioning, on whether he desired an attorney vitiated his initial request for counsel (and the Court ultimately held that it did not), that tribunal expressly rejected the position taken by the lower court and the dissenting Justices that, because Smith was not subjected to interrogation at the time he requested counsel, this request did not obligate the custodial authorities to refrain from further questioning. The Court stated: "Such reasoning is plainly wrong. A request for counsel coming 'at *any* stage of the process' requires that questioning cease until counsel has been provided." Smith, 469 U.S. at 97 n.6 (quoting Miranda, 384 U.S. at 444-45) (emphasis in Smith).

In the high Court's jurisprudence after Edwards and Smith, it has applied the bright-line rule of Edwards to ensure that an individual taken into custody and given Miranda warnings will, in fact, be provided counsel upon request, prior to and during police interrogation. In Arizona v. Roberson, 486 U.S. 675 (1988), the Court ruled that Edwards governs situations where an individual who is arrested for one offense and given Miranda warnings, requests the assistance of counsel, but does not receive such assistance, and then is questioned at a later time about a separate offense.[4] Key to the Court's rationale in extending Edwards to exclude any statements given during such questioning was the importance it placed on the role of counsel in preventing an arrested individual's Fifth Amendment right against self-incrimination from being forsaken as the result of the inherently coercive pressures of custody and interrogation. The Court observed that, when a suspect requests counsel, it is presumed "[a]s a matter of law . . . that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance." Roberson, 486 U.S. at 683. The Court noted that "[t]his discomfort is precisely the state of mind that Edwards presumes to persist unless the suspect himself initiates further conversation." Id. at 684. The Court found that the period of time which had elapsed between the incarcerated individual's unfulfilled request for counsel and the interrogation — three days — created "a serious risk that the mere repetition of the Miranda warnings would not overcome the presumption of coercion that is created by prolonged police custody." Id. at 686. Consequently, the Court rejected the contention that, in such situations, "fresh sets of

_____

[4] The arrested individual, Roberson, requested counsel immediately after being arrested and was not questioned at that time. Roberson, 486 U.S. at 678. Roberson subsequently gave the challenged statement during questioning about the separate offense three days later, which was the first time he had been interrogated about that offense.

<u>Miranda</u> warnings will 'reassure' a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled." <u>Id.</u>

Significant for purposes of the instant matter was the high Court's recognition in <u>Roberson</u> that "prolonged police custody" of an individual after his or her request for counsel has not been honored is, in and of itself, presumptively coercive because it overcomes the ability of the individual to make a genuinely free and unfettered choice regarding the exercise of his or her Fifth Amendment right against self-incrimination when police commence the interrogation process. Here, the period of detention between Appellee's initial request for the assistance of counsel, which police ignored, and his interrogation, was *twice* as long — six days — as that disapproved of by the Court in <u>Roberson</u>.

After <u>Roberson</u>, in <u>Minnick v. Mississippi</u>, 498 U.S. 146 (1990), the high Court clarified and enhanced the <u>Edwards</u> rule by requiring counsel's presence at any interrogation held after an individual in custody requests the assistance of counsel, even if the individual in custody has been given the opportunity to consult with an attorney. The Court noted that "[a] single consultation with an attorney does not remove the suspect from persistent attempts by officials to persuade him to waive his rights, or from the coercive pressures that accompany custody and that may increase as custody is prolonged." <u>Minnick</u>, 498 U.S. at 153.[5] The Court found that, to allow police questioning of an individual in custody in the absence of counsel, even if the individual

_____

[5] The accused, Minnick, was arrested and interrogated the following day by FBI agents during which he gave a statement and also requested a lawyer. After that interrogation, counsel was appointed for Minnick, and he consulted with that attorney 2 or 3 times. Two days later, Minnick was again questioned by a deputy sheriff without being granted the opportunity to have his attorney present at the interrogation. Although the lower courts suppressed the statements Minnick gave to the FBI agents, it did not apply <u>Edwards</u> to suppress his statements to the deputy sheriff.

has consulted with counsel, would be inconsistent with Edwards' objective "to protect the suspect's right to have counsel present at custodial interrogation," and would undermine Miranda's determination that the presence of counsel at interrogation was vital to protect a detained individual's Fifth Amendment rights from the dangers inherent in a "secret interrogation process." Minnick, 498 U.S. at 154 (quoting Miranda, 384 U.S. at 470). Consequently, the Court ruled that the interrogation "was a formal interview which [the accused] was compelled to attend. Since [the accused] made a specific request for counsel before the interview, the police-initiated interrogation was impermissible," and his statement to the deputy sheriff was inadmissible at trial. Minnick, 498 U.S. at 156. This decision thus constitutes another admonition by the high Court that the Fifth Amendment rights of an individual in custody who has requested the assistance of counsel to assist him or her in facing interrogation are violated if, thereafter, that individual is interrogated without counsel being present.

Relevant to the case *sub judice*, Appellee, then in custody and just like the accused in Minnick, made a request for counsel prior to interrogation by police, but he nevertheless was subjected to police questioning during which there was no attorney present with whom he could consult. Consequently, I consider Minnick to require the suppression of any statements Appellee made during this uncounseled interrogation. Indeed, pursuant to the teachings of Miranda, Edwards, and Minnick, our Court has previously held, in Commonwealth v. Santiago, 599 A.2d 200 (Pa. 1991), that, even when a person, upon arrest, requested and *received* counsel, but detectives subjected him to an initial interrogation about a murder two days later without ensuring that appointed counsel was present, his Fifth Amendment right to counsel was violated, and the statements he made in response to police questioning were suppressed. Importantly, our Court in Santiago did not perceive the relevant constitutional analysis

under the Miranda-Edwards-Minnick line of cases to depend on whether the uncounseled interrogation was the first one after the individual had invoked his Fifth Amendment rights, or whether it was a second or subsequent police interrogation after such an invocation; rather, our Court found dispositive the fact that the defendant was in custody at the time the uncounseled interrogation took place. We stated, in this regard:

> We attach no significance to the artificial distinction between "reinterrogation" and "initial interrogation." For practical purposes, there is simply no difference from the suspect's point of view concerning this distinction. All that the suspect knows is that he has been in continuous custody and that he is being interrogated again. Whether it happens to be an "initial" interrogation by certain officials is irrelevant. The suspect has already been interrogated at least once while he has been in custody, and thus, even this "initial" interrogation by . . . police detectives is more properly classified as "reinterrogation."

Santiago, 599 A.2d at 203 n.10.

In my view, then, the polestar principle established by Miranda, Edwards, Minnick and Santiago is that any invocation of the Fifth Amendment right to counsel by an individual while he or she is in custody must be honored before police can question that person. This is because, as these cases consistently recognize, an individual who is in custody is subject to the inherently coercive pressures attendant to that situation and its concomitant deleterious effect on the individual's ability to exercise free will and to make truly voluntary decisions. By contrast, in non-custodial situations, there is no danger that, in responding to police questioning, the compulsive pressure created by the circumstances of detention will lead to an involuntary waiver by the individual of his or her Fifth Amendment rights. This is consistent with the high Court's oft-expressed opinion that an individual who is not in custody possesses the freedom to terminate police questioning at any time, and, thus, can avoid the type of "police badgering" the

high Court was concerned with preventing through the Miranda-Edwards line of cases. See, e.g., Montejo, 556 U.S. at 795 ("When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering.").

Thus, these cases consider a request for counsel by an individual in custody to be, in addition to the exercise of a fundamental constitutional right, an explicit acknowledgement that he or she requires the assistance of an attorney to deal with any police questioning which may take place thereafter while he or she remains in custody. Requiring interrogation to cease under these circumstances provides the individual in custody reassurance that he or she will have the assistance of counsel promised by the custodial authorities in the Miranda warnings, before having to face any interrogation by those same authorities. Consequently, in accordance with these decisions, I view Appellee's request for the assistance of counsel, made while he was in custody, to have been a valid invocation of his Fifth Amendment rights which his interrogators were obliged to honor.[6]

The Majority, however, departs from these decisions based on its reading of footnote 3 in McNeil as a predictive indication that the high Court would not consider Appellee's invocation of his Miranda rights to have foreclosed further interrogation.[7] As

---

[6]   In Maryland v. Shatzer, 559 U.S. 98 (2010), the high Court, while continuing to acknowledge the coercive effects of custody on an individual's ability to make a genuinely free election to waive Fifth Amendment rights, held that a 14-day break in custody was sufficient to dispel such effects so that the Edwards' presumption of involuntariness of a waiver of the Fifth Amendment did not apply. No such break in custody occurred in this case, as Appellee remained in custody from the time of his arrest until his interrogation by detectives from the Philadelphia homicide unit six days later; thus, in my view, Edwards and its progeny govern the disposition of this matter. See Shatzer, 559 U.S. at 108 ("The only logical endpoint of Edwards disability is termination of Miranda custody and any of its lingering effects.").

[7]   McNeil was authored by Justice Scalia and joined by then-Chief Justice Rehnquist, Justices White, O'Connor, Kennedy and Souter. Justice Stevens filed a dissenting opinion, joined by Justices Marshall and Blackmun.

I explain at greater length *infra*, in addition to considering this footnote *dictum*, I respectfully differ from the Majority's interpretation of it. In <u>McNeil</u>, the appellant was arrested on an armed robbery charge and was read his <u>Miranda</u> rights; however, he did not request the assistance of an attorney. Later, appellant appeared before a bail commissioner in a preliminary hearing. At this hearing, appellant was represented by a public defender, but said nothing during the proceeding. After the hearing, appellant was questioned by police three separate times without counsel, and given <u>Miranda</u> warnings before each of these interrogations; however, each time he was questioned, appellant waived his Fifth Amendment rights and gave statements incriminating himself in a murder. Subsequently, appellant sought suppression of the statements on the basis of his contention that his appearance at the preliminary hearing accompanied by counsel was, by itself, sufficient to invoke his <u>Miranda</u> right to counsel and, thus, required suppression under the <u>Miranda</u>-<u>Edwards</u> line of cases.

The high Court rejected this argument. The Court agreed with appellant that his appearance at the preliminary hearing with counsel constituted a valid invocation of his right to counsel protected by the Sixth Amendment, but noted that there was a clear distinction between the "offense-specific" nature of the right to counsel guaranteed by that amendment and the general right for an individual in custody to the assistance of counsel to deal with the police which is secured by the Fifth Amendment, as was recognized in the <u>Miranda</u>-<u>Edwards</u> line of cases. The Court concluded that the latter right was not invoked by counsel's mere presence at the bail hearing, explaining:

> The purpose of the Sixth Amendment counsel guarantee — and hence the purpose of invoking it — is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, *after* "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime. [United States v.] <u>Gouveia</u>, 467 U.S., at 189, 104 S.Ct., at 2298. The purpose

of the Miranda–Edwards guarantee, on the other hand — and hence the purpose of invoking it — is to protect a quite different interest: the suspect's "desire to deal with the police only through counsel," Edwards, supra, 451 U.S., at 484, 101 S.Ct., at 1884. This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches whether or not the "adversarial relationship" produced by a pending prosecution has yet arisen). To invoke the Sixth Amendment interest is, as a matter of *fact, not* to invoke the Miranda-Edwards interest. One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution. It can be said, perhaps, that it is *likely* that one who has asked for counsel's assistance in defending against a prosecution would want counsel present for all custodial interrogation, even interrogation unrelated to the charge. That is not necessarily true, since suspects often believe that they can avoid the laying of charges by demonstrating an assurance of innocence through frank and unassisted answers to questions. But even if it were true, the *likelihood* that a suspect would wish counsel to be present is not the test for applicability of Edwards. The rule of that case applies only when the suspect "ha[s] *expressed*" his wish for the particular sort of lawyerly assistance that is the subject of Miranda. Edwards, supra, 451 U.S., at 484, 101 S.Ct., at 1884 (emphasis added). It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.* Requesting the assistance of an attorney at a bail hearing does not bear that construction.

McNeil, 501 U.S. at 177- 78 (emphasis and alterations original).

Consequently, the actual controlling legal holding of McNeil, by which our Court is bound, is quite narrow — namely, in order for the clear protections of the Fifth Amendment right to counsel spelled out in the Miranda-Edwards line of cases to apply, an individual who desires "the assistance of an attorney in dealing with custodial

interrogation by the police," <u>McNeil</u>, 501 U.S. at 178, must express that desire affirmatively. There is no question in the case at bar, as acknowledged by the Majority, that Appellee's written assertion of his <u>Miranda</u> rights constituted "a very clear putative invocation of the <u>Miranda</u>-based right to counsel." Majority Opinion at 2.

Yet, the Majority herein disavows the validity of that invocation based on language in footnote 3 of the <u>McNeil</u> opinion, which, in my view, is non-precedential. In this footnote, the <u>McNeil</u> majority responded to conjecture by the dissent that the failure to treat an invocation of the Sixth Amendment right to counsel as equivalent to a general request for the assistance of counsel in dealing with police in all matters, *a la* <u>Edwards</u>, would, in the future, result in attorneys for an accused, or their clients at their direction, placing a statement on the record at a preliminary hearing "that will obviate the consequences of today's holding." <u>McNeil</u>, 501 U.S. at 184. Although the dissent did not elaborate on the nature of such an "obviating" statement, the majority interpreted it to be an invocation of <u>Miranda</u> rights and responded:

> We have in fact never held that a person can invoke his <u>Miranda</u> rights anticipatorily, in a context other than "custodial interrogation" — which a preliminary hearing will not always, or even usually, involve <u>cf.</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601-602, 110 S.Ct. 2638, 2650-2651, 110 L.Ed.2d. 528 (1990) (plurality opinion); <u>Rhode Island v. Innis</u>, 446 U.S. 291, 298–303, 100 S.Ct. 1682, 1688–1691, 64 L.Ed.2d 297 (1980). If the <u>Miranda</u> right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the <u>Miranda</u> right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect. Assuming, however,

> that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle. It would remain intolerable that a person in custody who had expressed *no* objection to being questioned would be unapproachable.

Id. at 182 n.3 (emphasis original).

In my view, this footnote is nonbinding *dicta* as it addresses a legal question which was not before the Court, or central to its holding. See, e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67 (1996) (only the holding of a prior opinion of the United States Supreme Court, and "those portions of the opinion necessary to that result," are binding); Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 351 n.12 (2005) ("Dictum settles nothing, even in the court that utters it."). Moreover, from my perspective, this footnote, when it is considered in conjunction with the opinion's overall view of the Miranda-Edwards line of cases,[8] constitutes nothing more than a reiteration by the high Court that the prospect of the loss of Fifth Amendment rights, which, as discussed above, is the central concern of the Miranda-Edwards line of cases, is simply not implicated in situations where an individual is not in custody and, thus, will not be subjected to its coercive effects during interrogation.

This interpretation is further bolstered by the fact that the high Court, in this footnote, explicitly chose as two of its three illustrative examples non-custodial situations, such as an individual's assertion of Miranda rights by letter whenever he or she has not been arrested by police, or whenever he or she has not even been identified as a suspect. Its third example — invocation of Miranda rights at a preliminary

---

[8] See McNeil, 501 U.S. at 178 ("[T]he particular sort of lawyerly assistance that is the subject of Miranda . . . [is] the assistance of an attorney *in dealing with custodial interrogation by the police*." (emphasis original)).

hearing, which is conducted post-arrest — frequently involves non-custodial situations where the individual invoking such rights has been released on bail or his or her own recognizance at the time of the hearing. In any event, all of these examples are most unlike the factual circumstances of this case, where an individual who was indisputably in custody on a murder charge expressly requested the assistance of counsel and indicated that he did not wish to be questioned without counsel being present. In sum, this footnote does not control the question of whether this type of request for the assistance of counsel, made by an individual *in custody*, and for the purpose of "*dealing with custodial interrogation*," McNeil, 501 U.S. at 178, can be made only after an interrogation has begun, or in close temporal proximity to its commencement, in order for police to be obligated to honor it. Moreover, I regard the footnote to offer only equivocal guidance as to how the high Court might rule if squarely confronted with this question. See id. at 182 n.3 ("The fact that we have allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation does not *necessarily* mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect." (emphasis added)). Therefore, inasmuch as the high Court has recently re-affirmed that the Miranda-Edwards-Minnick line of cases is "not in doubt," see Montejo, 556 U.S. at 794, I would find that they govern the disposition of this question, and that Appellee's request was sufficient to have triggered the protections of those cases because it was made while he was in custody, and it was done with the express purpose of securing counsel's assistance for any interrogation to which he would be subjected.[9]

---

[9] I acknowledge that some states' supreme courts and some federal circuit courts have interpreted this footnote from McNeil in a similar fashion as the Majority, and, correspondingly, have held that certain types of anticipatory invocations of Miranda rights did not require suppression of statements made during subsequent uncounseled (continued…)

interrogations. See, e.g., People v. Villalobos, 737 N.E.2d 639 (Ill. 2000) (signing of form at bond hearing on marijuana charge, demanding a preliminary hearing, and which also contained a section entitled "notice of representation" purporting to bar the defendant's participation in questioning on any other case without the presence of counsel was not a valid invocation of Miranda rights); United States v. Lagrone, 43 F.3d 332, 339 (7th Cir. 1994) (store owner's unsuccessful attempt to contact attorney while handcuffed to ask about whether he should give consent to search did not constitute valid invocation of Miranda right to counsel since "[he] did not request an attorney immediately before, in response to, or during custodial interrogation") (emphasis omitted). However, as the parties have recited in their briefs, and as referenced by the Majority, there is a distinct split of authority on this question, which, from my perspective, indicates no clear governing legal consensus. Thus, in the absence of binding precedent from the United States Supreme Court to the contrary, I favor aligning with the high courts of our sister jurisdictions, and other federal circuits, that do not consider the McNeil footnote as a deviation by the high Court from its Miranda-Edwards-Minnick line of decisions. See, e.g., State v. Rose, 604 A.2d 24, 27 (Me. 1992) (holding that defendant's act of circling a preprinted request for the assistance of counsel on a detainer form involving criminal charges lodged in Maine, while he was a prisoner in Arizona, was sufficient to invoke the protections of Miranda and Edwards; "[g]iven the fact that he was in custody and subject to interrogation, no rational purpose would be served by distinguishing between a request for counsel made before a Miranda warning and one made after such a warning."); State v. Chew, 695 A.2d 1301 (N.J. 1997) (holding that defendant's request to mother to call his attorney as he was being arrested at his home was a valid invocation of Miranda rights, such that statement given in an uncounseled interrogation later at the police station must be suppressed, and rejecting argument that questioning must be imminent in order for Edwards to apply); State v. Torres 412 S.E.2d 20, 26 (N.C. 1992) (holding that, where defendant was in custody at the sheriff's department but not yet interrogated, her request for counsel to the sheriff was, under Miranda, a valid invocation of her Fifth Amendment rights: "[i]t would make little sense to require a defendant already in custody to wait until the onset of questioning or the recitation of her Miranda rights before being permitted to invoke her right to counsel."), *overruled in part on other grounds*, State v. Buchanan, 543 S.E.2d 823 (N.C. 2001); Walker v. State, 795 P.2d 1064, 1067 (Okl. Ct. Crim. App. 1990) (holding that Edwards applied to bar confession of a defendant who requested to speak with his attorney prior to being moved to a different county, even though the request was not made during any interrogation, due to the fact that defendant was questioned without counsel the next day after having been moved), and followed in Marquez v. State, 890 P.2d 980 (Okl. Ct. Crim. App. 1995) (continuing to regard a pre-interrogation request for the assistance of counsel as governed by Edwards); State v. Hambly, 745 N.W.2d 48, 61 (Wis. 2008) (defendant's request for an attorney
(continued…)

As the Majority acknowledges, bright-line rules have value in furnishing clear guidance to law enforcement, which is precisely what the Miranda-Edwards-Minnick line of cases provides in these situations.[10]  From my perspective, because this bright-line

---

(…continued)

immediately upon being arrested and handcuffed by detectives investigating drug activity was an effective invocation of his Fifth Amendment right to counsel, since it was made while the defendant was in custody); U.S. v. Kelsey, 951 F.2d 1196 (10th Cir. 1991) (holding that defendant's request for an attorney made while he was in custody as his house was being searched was a valid invocation of his Fifth Amendment right to counsel under Miranda and Edwards, even though he was not being interrogated by the police when he made the request, nor given Miranda warnings, noting the coercive effects of the circumstances of his detention and the passage of time before he was interrogated — three hours — during which his request for counsel was unfulfilled).

[10]  Unlike the Majority, I do not view application of the bright line rule articulated in the Miranda-Edwards-Minnick line of decisions in situations such as the instant matter to be an impediment to effective law enforcement.  As the high Court has observed:  "[n]o system [of criminal justice] worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, [constitutional] rights."  Escobedo v. Illinois, 378 U.S. 478, 490 (1964).  Indeed, the Court has emphasized the vital role which the right to consult with an attorney regarding police interrogation serves under our Constitution in ensuring the proper functioning of our system of criminal justice:

> An attorney may advise his client not to talk to police until he has had an opportunity to investigate the case, or he may wish to be present with his client during any police questioning. In doing so an attorney is merely exercising the good professional judgment he has been taught. This is not cause for considering the attorney a menace to law enforcement. He is merely carrying out what he is sworn to do under his oath — to protect to the extent of his ability the rights of his client.

Miranda, 384 U.S. at 480-81.  See also Fare v. Michael C., 442 U.S. 707, 719 (1979) ("Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts.  For this reason, the Court fashioned in Miranda the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease.").

Application of the Miranda-Edwards-Minnick rule in cases such as the matter at bar, is, thus, eminently consistent with the high Court's objective of protecting the basic (continued…)

rule requires that police honor the request of an individual in custody for the assistance of counsel to deal with interrogation, made at any time while the individual is in custody, before commencing questioning of the individual, the lower courts properly applied it to exclude Appellee's confession, since he was not provided the assistance of counsel prior to and during interrogation, as he clearly and unequivocally requested, and which was his federal and state constitutional right.

---

(…continued)
constitutional right of every person to consult with an attorney prior to and during police interrogation, but it does not thwart the ability of the police to solve a crime. Although questioning individuals taken into custody remains a vital tool in solving crime, it is by no means the only means to do so, especially in light of substantial advances in modern forensic science. See, e.g., Professor Marcy Strauss, "The Sounds of Silence: Reconsidering the Invocation of the Right to Remain Silent Under Miranda," 17 Wm. & Mary Bill Rts. J. 773, 829 n.164 (2009) (observing that the increasing utilization of scientific technology such as DNA evidence has diminished the need for confessions and that "[t]he growth in scientific technology may render it less essential for law enforcement agencies to center an investigation on information 'cajoled' from a suspect, especially in the most serious of crimes like murder and rape."). Notably, application of the Miranda-Edwards rule in these circumstances does not in any way preclude law enforcement from pursuing any and all other means of investigation at their disposal after an individual in custody has made a request for counsel to deal with any interrogation to which he or she may be subjected. See Miranda, 384 U.S. at 477 ("When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him."). Moreover, an individual who has requested the assistance of counsel to deal with interrogation may still, at any time, reconsider that request and approach police to discuss the case with them even if counsel has not been provided. See Edwards, 451 U.S. at 484-85. Furthermore, and importantly, once counsel has been provided, police are free to renew their request to speak with the individual, and he or she may, after consultation with that attorney, agree to speak with police with the attorney present. Assuring access to counsel requested by an individual in custody merely serves to confirm that any statements given during a subsequent custodial interrogation are, in actuality, the product of a free and voluntary choice. See Miranda, 384 U.S. at 470 ("If the accused decides to talk to his interrogators, the assistance of counsel can mitigate the dangers of untrustworthiness.").

I, therefore, dissent.