518 A.2d 537

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Bernard M. KARASH, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1985.

Decided Nov. 24, 1986.

Al Flora, Jr., Asst. Public Defender, for appellant.

Robert J. Gillespie, Jr., Dist. Atty., Joseph C. Giebus, Wilkes-Barre, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

8

## OPINION

NIX, Chief Justice.

We are here called upon to address appellant's contention that a request for removal of a prisoner from a holding facility for the purpose of transporting him to police headquarters for custodial interrogation is a "critical stage" under federal constitutional law [1] and should not be permitted without a prior counselled adversarial hearing. Appellant argues that the entitlement to the presence of counsel between his arraignment and preliminary hearing is dictated by fundamental fairness and therefore concludes from that premise that the presence of counsel must be mandated "at any 'bring up' order proceeding." [2] See Brief pg. 16.

Although appellant in his presentation to this Court by way of his brief and oral argument has not separated the Fifth and the Sixth Amendment contentions, for the sake of clarity in this opinion we will address the Fifth Amendment claim under section A and the Sixth Amendment claim under section B.[3]

Appellant was found guilty, after a trial by jury, of twelve counts of Burglary, 18 Pa.C.S. § 3502, nine counts of

1. Appellant confined his complaint to the Fifth and Sixth Amendments to the Constitution of the United States. We therefore will so limit our consideration and we will not *sua sponte* address state constitutional questions. *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975). *See also, Alco Parking Corporation v. Pittsburgh,* 453 Pa. 245, 307 A.2d 851 (1973).

2. Although the reference to "fundamental fairness" would appear to allude to a possible federal due process challenge, appellant has not expressly raised such a complaint.

 The term "bring-up" order refers to the administrative authorization by the court for the movement of a prisoner from a holding facility where he is being confined awaiting the disposition of the charges that have been preferred against him. Where one is in police custody prior to being formally charged, court authorization is not required to permit the movement of that individual. *See, e.g., U.S. ex rel. Dickerson v. Rundle,* 430 F.2d 462 (3rd Cir.1970).

3. Because of the intermingling of the two arguments, some of the statements of counsel as set forth herein, e.g., the use of the term "critical stage" in a Fifth Amendment analysis, may appear inappropriate. However, in order to state appellant's position accurately, we are required to use the terminology that he has chosen to employ.

Theft by Unlawful Taking or Disposition, 18 Pa.C.S. § 3921, and one count of Escape, 18 Pa.C.S. § 5121, the latter occurring during one of the occasions when he was in police custody pursuant to one of the orders presently the focus of this appeal. On the burglary charges he received concurrent sentences of five (5) to ten (10) years imprisonment followed by a seven (7) year consecutive term of probation for the escape charge. Upon appeal the Superior Court affirmed the judgments of sentence, 341 Pa.Super. 616, 491 A.2d 919 (1985).

These burglaries were committed between March through June 1981 in Luzerne County. On August 12, 1981, August 13, 1981, and August 17, 1981, appellant was removed from the Luzerne County Prison by police officials and interrogated during which periods appellant made incriminating statements and assisted the police in recovering some of the stolen articles.[4] This evidence was introduced against appellant at trial over objection. One of the reasons offered in suppression of the evidence was that the authorization for the removal of appellant from the detention facility was accomplished through an *ex parte* procedure, in which appellant had no input. The legitimacy of that practice is here being called into question.

### A.

Appellant in framing the issue seeks to combine the administrative procedure by which the defendant, who is in pretrial detention, is made available for custodial interrogation and the rights that attach upon the custodial interrogation itself. Unquestionably, custodial interrogation is indeed recognized as implicating the right to counsel to protect against self-incrimination under the Fifth Amendment. *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d

4. At the time of this initial "bring-up", appellant was incarcerated for an unrelated burglary conviction. His arrest and preliminary arraignment on the instant burglary charges took place on October 16, 1981. We also note that in addition to his sentences on the instant convictions appellant is serving a mandatory life sentence for an unrelated second degree murder conviction.

182 (1974); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In each instance in this matter the right to counsel was recognized and *Miranda* warnings were given prior to the beginning of the questioning. In each instance the right to have counsel was waived. *Miranda v. Arizona, supra.* Such waivers are recognized as valid and subsequent admissions are admissible even though made without the benefit of the advice of counsel. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Since *Miranda* is recognized as affording the protection of the right to counsel during the custodial interrogation, the question here posed is whether some independent interest is involved because the "bring-up" procedure was employed to secure his presence. Appellant appears to argue that since the "bring-up" was used for this purpose that procedure became a "critical stage", thus requiring counsel to satisfy the Fifth Amendment mandate.[5]

The federal decisions remove any doubt that a valid waiver of the *Miranda* warning satisfies all of the Fifth Amendment right to counsel concerns. *United States v. Poole,* 794 F.2d 462 (9th Cir.1986); *United States v. McClure,* 786 F.2d 1286 (5th Cir.1986); *United States v. Fouche,* 776 F.2d 1398 (9th Cir.1985); *United States v. Porter,* 764 F.2d 1 (1st Cir.1985); *United States v. Geittmann,* 733 F.2d 1419 (10th Cir.1984); *United States v. Burgos,* 720 F.2d 1520 (11th Cir.1983); *United States v. Mata-Abundiz,* 717 F.2d 1277 (9th Cir.1983); *United States*

---

**5.** Any additional intimidation alleged to have been generated would likely flow from the prior incarceration and not from the mere process of transporting the subject to the place in question. In any event, issues relating to coercion or intimidation go to the voluntariness of the resultant statement or admissions. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). The court below found the statements to have been voluntarily made and that finding is not here challenged.

*v. Wilson,* 690 F.2d 1267 (9th Cir.1982); *United States v. Surridge,* 687 F.2d 250 (8th Cir.1982); *United States v. Booth,* 669 F.2d 1231 (9th Cir.1981); *Moore v. Ballone,* 658 F.2d 218 (4th Cir.1981); *United States v. Harris,* 611 F.2d 170 (6th Cir.1979); *Cervantes v. Walker,* 589 F.2d 424 (9th Cir.1978). Here the warnings were given prior to each interrogation and the opportunity to have counsel present was knowingly and voluntarily waived. The fact that the "bring-up" was used to make appellant available for questioning does not alter the situation. As noted in *Commonwealth v. Broaddus,* 458 Pa. 261, 266, 342 A.2d 746, 749 (1974), the "bring-up" is merely an administrative process and adds nothing to the constitutional considerations raised in this argument.

██ We therefore conclude that the fact that an administrative procedure was employed to facilitate appellant's availability for custodial questioning does not in and of itself affect the character of the custodial questioning nor does it impact upon the rights to which the appellant was entitled during the custodial interrogation. Thus we are satisfied that there was a valid waiver of *Miranda* warnings in this case and no violation of the Fifth Amendment guarantees occurred.

### B.

The more difficult question is whether the Sixth Amendment right to counsel is implicated under this factual setting. The right to counsel under the Sixth Amendment made applicable to the States under the Fourteenth Amendment goes beyond protecting the defendant against self-incrimination during custodial interrogation. Counsel is charged also with the investigation of the charges, preparation of the defense, the designing of the strategy to be employed, as well as the effective representation at trial. The role of counsel as mandated by the Sixth Amendment was set forth in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932):

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 68–69, 53 S.Ct. at 64.

The Supreme Court has expressly recognized that the counsel requirement under *Miranda* was designed to protect the Fifth Amendment privilege against self-incrimination rather than to vindicate the Sixth Amendment right to counsel. *See United States v. Gouveia*, 467 U.S. 180, 188, n. 5, 104 S.Ct. 2292, 2298, n. 5, 81 L.Ed.2d 146 (1984); *Rhode Island v. Innis*, 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980); *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Johnson v. New Jersey*, 384 U.S. 719, 729–730, 86 S.Ct. 1772, 1778–79, 16 L.Ed.2d 882 (1966). It therefore follows that a waiver under *Miranda* will not necessarily waive the right of counsel guaranteed under the Sixth Amendment.

The threshold issue in this phase of the inquiry is whether the Sixth Amendment right to counsel attached under these facts. At the outset it must be noted that the fact that appellant was in custody throughout the period in question is not in and of itself determinative of this question. *See, e.g., United States v. Gouveia, supra* (inmates were not constitutionally entitled to the appointment of counsel while they were in administrative segregation). The triggering

event for Sixth Amendment rights to attach is the commencement of adversary judicial proceedings against the defendant. *United States v. Gouveia, supra; Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

Here again appellant's emphasis upon the "bring-up" process is misplaced.[6] As previously stated the "bring-up" procedure is merely the administrative vehicle through which the movement of a prisoner is facilitated. It, in and of itself, cannot serve as the triggering factor to cause the right of counsel under the Sixth Amendment to attach. The process by which the movement is effectuated is a neutral fact; what is of constitutional significance is the purpose for which it is employed and when it is employed. Where one is taken for interrogation, without counsel, after the state has made a commitment to prosecute a Sixth Amendment concern arises. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Gouveia, supra; United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424

---

**6.** It is obvious that counsel's preoccupation with the altering of the procedure employed to transfer prisoners from place to place during periods of incarceration obscured the underlying constitutional issues presented in this appeal. We note that amici also was more concerned with the "bring-up" procedure than with the underlying issues which occasioned our grant of allocatur.

(1977); *Massiah v. United States, supra.* Thus we must focus upon whether the commitment to prosecute had been made prior to any of these periods of questioning.

■ Since the Supreme Court's decision in *United States v. Wade, supra,* we have in this jurisdiction treated the arrest as the triggering event which causes the Sixth Amendment right to attach. *See Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974); *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970).

..., [W]e hold that ... [*Whiting*], appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest.

As we noted in *Whiting,* the policy behind the *Wade* rule applies with equal force to all confrontations conducted after arrest.

*Commonwealth v. Richman, supra,* 458 Pa. at 171, 320 A.2d at 353.

Here the complained of confrontations occurred on August 12, 1981, August 13, 1981, and August 17, 1981; appellant was not arrested for these charges until October 16, 1981. Thus the Sixth Amendment objection to these confrontations must fail.

## C.

Finally, we would be remiss in our responsibility if we did not address the alleged abuses of the administrative process. The appellant was initially brought up on August 12, 1981, for questioning and preliminary arraignment (relating to charges not here involved) by virtue of an order that had originally been obtained six weeks earlier. The record is unclear as to whether the court initiating that order approved in advance the change in the date for its execution and expanded the purpose to include questioning. The second order authorized appellant's removal to either the office of the District Attorney or the Kingston Borough Police Department for purposes of investigation. It is alleged that in violation of that order the police transported appellant to numerous homes within the county during a

period of seven hours. The final order was issued on August 17, 1981, and directed that appellant was to be questioned only upon permission of counsel. It is alleged that this limitation was also ignored.

■ The misuse of a court order is an affront to the court issuing that order. It is the responsibility of the court issuing process to guard against its abuse. The court possesses a panoply of remedies to assure that its orders are faithfully performed. *In re Bernhart*, 501 Pa. 428, 461 A.2d 1232 (1983); *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975); *Commonwealth v. Torrez*, 335 Pa.Super. 612, 485 A.2d 63 (1984). If it is established that there was in fact a deliberate misuse of process in this or any other case, we expect the court issuing the order to take the appropriate remedial action.

Appellant urges us to promulgate a rule which would require counsel at the "bring-up" stage. It is asserted that this would provide an effective way to prevent such abuses in the future. In response, we note first that our rule-making function is normally not discharged through opinions. Second, in view of the available means to stop such a practice, there is no need to consider another possible remedy.

Accordingly, the order of the Superior Court sustaining the judgment of sentence is affirmed.