599 A.2d 200

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Salvador Carlos SANTIAGO, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1990.

Resubmitted Jan. 9, 1991.

Decided Nov. 14, 1991.

(iii) Five hundred dollars ($500) for full-time student enrolled in other occupational or technical programs.

.   .   .   .   .

Jon C. Botula (Court-appointed), Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Edward Marcus Clark, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The question in this case is whether appellant's Fifth Amendment right to counsel was violated, where he requested and received counsel immediately upon arrest for one offense, and the police subsequently initiated custodial interrogation concerning other unrelated offenses without the presence of counsel. We find that appellant's Fifth Amendment right to counsel was violated and vacate the judgments of sentence.

This is an automatic direct appeal[1] from a sentence of death imposed upon appellant, Salvador Carlos Santiago, by the Court of Common Pleas of Allegheny County. A jury

1. See, 42 Pa.C.S.A. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

found Santiago guilty of murder in the first degree,[2] robbery,[3] and a violation of the Uniform Firearms Act (VUFA).[4] A separate penalty hearing was held regarding the murder conviction. The jury found three aggravating circumstances which outweighed any mitigating circumstances, and fixed Santiago's penalty thereon at death. Sentencing was deferred pending the receipt of post-trial motions, which were subsequently filed, argued and denied. Santiago was sentenced to death[5] on the homicide charge, imprisonment of ten to twenty years on the robbery charge consecutive to the death sentence, and imprisonment of two and one-half to five years on the VUFA charge concurrent to the robbery charge.

On appeal, Santiago raises numerous contentions of error, which we need not address because we are compelled to reverse the judgments of sentence based upon our determination that appellant's Fifth Amendment right to counsel was violated.

Santiago was arrested by special agents of the Federal Bureau of Investigation on April 4, 1985, in Washington, D.C. on the charge of unlawful flight to avoid prosecution for the murder of Dean O'Hara.[6] The F.B.I. agents immediately advised Santiago of his Miranda rights, and he invoked his right to remain silent and requested an attorney. Federal Public Defender Barney Keren was appointed to represent Santiago on April 5, 1985, and Santiago was arraigned before a U.S. Magistrate on that same date. On April 6, 1985, while Santiago remained in custody on the

2. 18 Pa.C.S. § 2501(a).

3. 18 Pa.C.S. § 3701(a)(1)(i).

4. 18 Pa.C.S. § 6106.

5. 42 Pa.C.S. § 9711.

6. A warrant had been issued for the arrest of Santiago in connection with an investigation into the murder of O'Hara being conducted by the Pennsylvania State Police in Lawrence County. Santiago was subsequently convicted of murder in the first degree and sentenced to life imprisonment for the murder of O'Hara. *Commonwealth v. Santiago,* 376 Pa.Super. 54, 545 A.2d 316 (1988), *appeal denied,* 522 Pa. 595, 562 A.2d 320 (1989). This murder was unrelated to the crimes that are the subject of the within appeal.

unlawful flight charge, two Pittsburgh police detectives sought to interview Santiago in connection with the murder of Patrick Huber, the matter being considered herein. Santiago indicated that he was willing to speak to the detectives without notifying attorney Keren. The detectives again advised Santiago of his Miranda rights, and Santiago further consented to the interrogation in writing. He then gave a statement admitting that he had murdered Patrick Huber while robbing the Minute Man Press.

On appeal, Santiago argues, *inter alia*, that the Pittsburgh police detectives improperly initiated custodial interrogation after he had invoked his right to counsel in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); and *Minnick v. Mississippi*, 498 U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). We agree.

In *Miranda*, the United States Supreme Court determined that in order to protect the Fifth Amendment privilege against self-incrimination from the inherently compelling pressures of custodial interrogation, "[i]f an individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d 694. In *Edwards*, the Court determined that additional safeguards for the Miranda right to counsel were necessary and held that once a suspect asserts the right, he may not be further interrogated "until counsel has been made available to him, . . . ." 451 U.S. at 484, 101 S.Ct. at 1885, 68 L.Ed.2d 378. Recently, in *Minnick*, the Court clarified the Edwards rule by holding that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his

7. The Appellant makes no claim under the Pennsylvania Constitution. Therefore, we address only the law as mandated by the United States Constitution. *Commonwealth v. Karash*, 513 Pa. 6, 518 A.2d 537 (1986).

attorney." 498 U.S. at ——, 111 S.Ct. at 490, 112 L.Ed.2d at 498.

In the case *sub judice*, the trial court found that Santiago's waiver of his Fifth Amendment rights and subsequent confession did not violate the requirements of *Edwards* because the Pittsburgh police detectives did not initiate interrogation "until after counsel was made available" to Santiago.[8] However, in light of the United States Supreme Court's clarification of the requirements of *Edwards* through its decision in *Minnick*, it would appear that the conduct of the Pittsburgh police detectives in initiating interrogation of Santiago without the presence of counsel, after Santiago invoked his right to counsel, violated Santiago's Fifth Amendment right to counsel. Nevertheless, there remain factual distinctions between *Minnick* and the case *sub judice* that we must address in order to dispose of this question.

In *Minnick*, the FBI had "reinitiated" interrogation of Minnick regarding his escape from prison and alleged involvement in a joint-murder, which had been the basis for his arrest. Whereas, in the case *sub judice*, the Pittsburgh police detectives were commencing an "initial" interrogation of Santiago regarding offenses committed against Patrick Huber, which were wholly unrelated to the charge of unlawful flight to avoid prosecution for the murder of O'Hara that had led to his arrest and subsequent invocation of his right to counsel. While it can be reasonably argued that this is a distinction sufficient to preclude application of the protections of *Minnick* for practical reasons, we are nevertheless compelled to hold otherwise by reason of the decision of the United States Supreme Court in *McNeil v. Wisconsin*, —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158

---

8. We note that at the time of trial in November 1986, the trial court did not have the benefit of the recent clarification of *Edwards* by the United States Supreme Court in *Minnick*. Accordingly, the decision of the trial court was not surprising given the subsequent decision of the United States Supreme Court to address the apparent ambiguity in the holding of *Edwards* that police may not reinitiate interrogation "until after counsel is made available."

(1991), which mandates application of the protections of *Edwards*, as clarified by its decision in *Minnick*, even where the police-initiated interrogation occurs in the context of a separate investigation.[9]

In *McNeil*, the United States Supreme Court addressed the distinction between the Sixth Amendment right to counsel, and the right to counsel derived from the Fifth Amendment's guarantee against compelled self-incrimination. The Sixth Amendment right is intended to protect the unaided layman who has been formally charged with a particular crime from critical confrontations with the state apparatus that has been geared up to prosecute him. The Fifth Amendment right is intended to protect the suspect's desire to deal with the police only through counsel in order to counteract the inherent pressures of custodial interrogation. The Court explained that the Fifth Amendment right is in one respect narrower because it relates only to custodial interrogation, and in another respect broader because it attaches regardless of whether an adversarial relationship from a pending prosecution has arisen.

In response to Miranda warnings, McNeil refused to answer any questions, but did not request an attorney. The United States Supreme Court determined that McNeil had invoked only his Sixth Amendment right to counsel through the presence of counsel at a bail hearing, and that such did not constitute invocation of his Fifth Amendment right to counsel. The Court thereafter stated that the Sixth Amend-

9. In *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the United States Supreme Court initially mandated application of the protections of *Edwards* even where the police-initiated interrogation occurs in the context of a separate investigation. However, this decision preceded the decision of the Court in *Minnick.* Accordingly, in *McNeil,* when the Court was presented with the question of custodial interrogation on separate offenses that occurred after its decision in *Minnick,* it was necessary for the Court to interpret its decision in *Roberson* as mandating application of the protections of *Edwards,* as clarified by its decision in *Minnick,* to unrelated offenses. Again, we note that the trial court had only the guidance provided by *Edwards.* Accordingly, since counsel was made available to Santiago prior to the interrogation, which seemingly satisfied *Edwards,* we would not have expected the trial court to further anticipate the decisions of the United States Supreme Court in *Roberson* or *McNeil.*

ment right to counsel was "offense-specific" whereas the Fifth Amendment right was "non-offense-specific." —— U.S. ——, 111 S.Ct. at 2206–2207, 115 L.Ed.2d at 165–166. Accordingly, the Court held that since the right that McNeil had invoked was "offense-specific," it could not be used to bar officials from interrogating McNeil regarding the other unrelated offenses without the presence of counsel.

In the case *sub judice*, however, Santiago unquestionably invoked his Fifth Amendment right to counsel in response to the initial interrogation by the F.B.I. agents. This exercise of a constitutional right, which the United States Supreme Court has held to be "non-offense-specific," therefore barred officials from interrogating Santiago regarding any other offense without the presence of counsel.

Accordingly, notwithstanding the fact that the Pittsburgh police detectives Mirandized Santiago and that Santiago specifically waived the presence of attorney Keren, we are compelled to conclude that the conduct of the Pittsburgh police detectives in initiating [10] interrogation of Santiago without notifying attorney Keren, while Santiago remained in custody on the unlawful flight charge and after he had invoked his Fifth Amendment right to counsel, violated Santiago's Fifth Amendment right to counsel.

For the foregoing reasons, the judgments of sentence of the Court of Common Pleas of Allegheny County are vacated, and the case is remanded for a new trial.

Reversed and Remanded.

McDERMOTT, J., files a concurring opinion in which LARSEN, J., joins.

10. We attach no significance to the artificial distinction between "reinterrogation" and "initial interrogation." For practical purposes, there is simply no difference from the suspect's point of view concerning this distinction. All that the suspect knows is that he has been in continuous custody and that he is being interrogated again. Whether it happens to be an "initial" interrogation by certain officials is irrelevant. The suspect has already been interrogated at least once while he has been in custody, and thus, even this "initial" interrogation by the Pittsburgh police detectives is more properly classified as "reinterrogation."

McDERMOTT, Justice, concurring.

Given the United States Supreme Court decision in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), I am constrained to agree with the majority's decision in this case. I note for the record, however, my concern with both decisions. I think the traditional analysis accorded to measure the efficacy of a constitutional waiver [1] is sufficient to handle the issues presented. We do not need yet another *per se* rule which inures only to the benefit of confessing felons. *See Minnick v. Mississippi*, 498 U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (Dissenting Opinion, Scalia, J.)

LARSEN, J., joins this concurring opinion.

---

1. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).