J-S64022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NIEJEA FRANKLIN STERN, | |
| Appellant | No. 1959 MDA 2016 |

Appeal from the Judgment of Sentence August 8, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005134-2014

BEFORE:  PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                 **FILED NOVEMBER 22, 2017**

Appellant, Niejea Franklin Stern, appeals from the judgment of sentence entered following his convictions of first-degree murder and firearms not to be carried without a license.[1]  We vacate Appellant's judgment of sentence and remand for resentencing.

The trial court summarized the factual history of this case as follows:

> The testimony at trial showed that on August 19, 2014, in the area of Hall Manor, Harrisburg, Pennsylvania, Malik Stern-Jones ("victim") was shot and murdered.[4]  The victim was killed by a gunshot wound to the right side of his neck while the victim was sitting in a car.  N.T. at 35.  Dr. Wayne Ross, an expert forensic pathologist, testified that 12 gauge Federal Triball ammunition from a 12 gauge shotgun was used to kill the victim.

---

[*]  Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2501(a)(1) and 6105(a)(1), respectively.

N.T. at 52-54. Dr. Ross also indicated that the shot was fired 5-7 feet away from the window of the car and that the cause of death was a gunshot wound to the neck. N.T. at 59, 62.

[4] Transcript of Proceedings, Jury Trial, February 29, 2016, March 1-3, 2016, pages 25, 36 (hereinafter "N.T. at ___").

Nicole Coleman, a resident of Hall Manor, was drinking at a nearby friend's place in the early morning hours of August 19, 2014. N.T. at 81, 86. She went back home to pick up a couple of more beers and noticed a young man that seemed out of place. N.T. at 89-90. Ms. Coleman noticed that he was wearing a neon green hooded sweatshirt with a white logo on it. N.T. at 92, 93. Additionally, Ms. Coleman noticed that this young man was carrying a shotgun. N.T. at 94. She indicated the direction this young man was walking and shortly thereafter heard two shots fired and heard a car crash. N.T. at 97-98. While in her travels around the neighborhood that evening, Ms. Coleman noticed two individuals, Jessie and Freddie Jay, hanging around a car. N.T. at 101. Finally, Ms. Coleman identified [Appellant] as the person she encountered on the morning of the incident. N.T. at 104. The Commonwealth introduced the testimony of Freddie Jay Williams[5] from a preliminary hearing held on September 30, 2014. N.T. at 130.

[5] Deceased.

David Lee testified that [Appellant] showed up at his house around 6:00 a.m. on August 19, 2014 and told him what happened. N.T. at 142. Mr. Lee testified that [Appellant] was wearing a green hoodie. N.T. at 143. Officer Jeffrey T. Cook, of the Harrisburg Police Department, described how [Appellant was] arrested. N.T. 172-177. Officer Cook also testified that when [Appellant] was arrested, he was wearing a green Notre Dame sweatshirt (a Kelly green or emerald green). N.T. at 177. The Commonwealth, through Officer Cook, introduced a Facebook photo that shows [Appellant] holding a shotgun. N.T. at 182. The Commonwealth also introduced the testimony of two forensic scientists, Susan Antwood and Michael Gorski[6], who performed gunshot residue analysis.

[6] *See generally* N.T. at 230-267.

Trial Court Opinion, 2/7/17, at 3-4.

On March 3, 2016, a jury convicted Appellant of the crimes stated above. On August 8, 2016, the trial court sentenced Appellant to serve a term of incarceration of life without the possibility of parole for the first-degree murder conviction and a concurrent term of incarceration of eighteen to thirty-six months for the firearms violation. Appellant filed a timely post-sentence motion on August 18, 2016, and the Commonwealth filed an answer on August 26, 2016. On November 9, 2016, the trial court denied Appellant's post-sentence motion. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether the trial court erred in admitting the preliminary hearing testimony of Freddie Williams into evidence at trial where such admission violated Appellant's rights under the 6th Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution and where [Appellant's] counsel did not have a full and fair opportunity for cross examination?

II. Whether Appellant's sentence of life without parole is in violation of the 8th Amendment to the United States Constitution, the United States Supreme Court decisions in *Miller v. Alabama*, 132 S.Ct. 2455, 183 L.Ed.2d 307 (2012) and *Montgomery v. Louisiana*, 136 S.Ct 718, 193 L.Ed[.]2d. 599 (2016), and Appellant's right to due process under both the United States and Pennsylvania Constitutions?

III. Whether the trial court abused its discretion in sentencing Appellant to life without parole where such a sentence is excessive and unreasonable and constitutes too severe a punishment in light of the rehabilitative needs and age of Appellant and where the punitive measures inherent in the sentencing scheme could have been accomplished with the

imposition of a lesser sentence pursuant to the statutory mandatory minimum under 18 Pa.C.S.A. § 1102.1?

IV. Whether the trial court erred in failing to suppress the photo array identification of Appellant by Freddie Williams, Nicole Coleman, and David Lee, and any subsequent identifications of Appellant?

Appellant's Brief at 6-7.

Appellant first argues that the trial court erred in denying his motion to suppress and admitting at trial the preliminary-hearing testimony offered by Freddie Williams. Appellant's Brief at 17-22. Appellant asserts that his defense counsel was not provided a fair opportunity to cross-examine Mr. Williams at the preliminary hearing, thus rendering the testimony inadmissible.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

- 4 -

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

(H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

In addition, the decision to admit or exclude evidence is committed to the trial court's sound discretion, and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. *Commonwealth v. Laird*, 988 A.2d 618, 636 (Pa. 2010). Such a finding may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009)).

Hearsay testimony is not admissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. Hearsay has been defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). *Commonwealth v. Smith*, 586 A.2d 957, 963 (Pa. Super. 1991). "The rationale for the hearsay rule is that

hearsay is too untrustworthy to be considered by the trier of fact."
***Commonwealth v. Bean***, 677 A.2d 842, 844 (Pa. Super. 1996).

Pa.R.E. 804 sets forth exceptions to the rule against hearsay when the declarant is unavailable as a witness and provides, in relevant part, as follows:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
> * * *
>
> (4)  cannot be present or testify at the trial or hearing because of death, . . .
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) *Former Testimony.*  Testimony that:
>
> (A)  was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B)  is now offered against a party who had-- or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(a)(4), (b)(1).

"Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him." ***Commonwealth v. McCrae***, 832 A.2d 1026, 1035 (Pa. 2003); U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]");

Pa. Const. art. I, § 9 ("In all criminal prosecutions the accused hath a right ... to be confronted with the witnesses against him[.]"). "It is well-established, however, that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing." *McCrae*, 832 A.2d at 1035. A defendant asserting a lack of a full and fair opportunity for cross examination must establish that he or she was deprived of "vital impeachment evidence." *Commonwealth v. Cruz–Centeno*, 668 A.2d 536, 543 (Pa. Super. 1995). "Vital impeachment evidence" includes prior inconsistent statements of the witness or the witness's criminal record. *Id.* at 543.

In addressing this issue, the trial court offered the following analysis:

> As Mr. Williams was unavailable due to his passing, we must now look to see whether [Appellant's] counsel had a full opportunity to cross-examine Mr. Williams. The Commonwealth introduced [at trial], through Commonwealth's Exhibit number 7, a recording of the testimony of Mr. Williams taken at the preliminary hearing. N.T.[, 2/29/16-3/3/16,] at 130. [Appellant's] counsel [at the preliminary hearing], the same counsel that represented [Appellant] at the time of trial, engaged in extensive cross-examination of Mr. Williams.[15] Additionally, defense counsel put an objection on the record during direct-examination.
>
> [15] This Court notes that the recording was approximately thirty (30) minutes long. Of that time, twenty-three (23) minutes was cross-examination performed by defense counsel.

- 7 -

In **_Commonwealth v. McCrae_**, the Pennsylvania Supreme Court held:

> Because statements within established hearsay exceptions possess the imprimatur of "longstanding judicial and legislative experience," their reliability is presumed. **_Idaho v. Wright_**, 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Similarly, although a statement admissible under an exception to the hearsay rule may nonetheless be inadmissible under the state and federal confrontation clauses if it does not bear "adequate indicia of reliability[,] ... reliability can be inferred without more in a case where the evidence falls within a thinly rooted hearsay exception." **_Id_**. at 815, 110 S.Ct. 3139. Alleged prior inconsistencies-such as appellant identifies-are classic points affecting evidentiary weight and not admissibility. The weight to be accorded the testimony, of course, is for the jury.

> **_Commonwealth v. McCrae_**, 832 A.2d 1026, 1035-[103]6 (Pa. 2003) (internal citations omitted). [Appellant] alleges [that there were] inconsistencies found between Mr. Williams' testimony at the preliminary hearing and those [statements] given [by Mr. Williams] to the police. Here, however, Mr. Williams' testimony is consistent in identifying [Appellant] as the individual who approached the car the victim was ultimately shot in and in observing [Appellant] draw a "long-gun." Finally, the weight afforded to Mr. Williams' testimony, along with all other testimony, is for the jury to decide.

Trial Court Opinion, 2/7/17, at 9-10.

It is undisputed that Mr. Williams testified at Appellant's preliminary hearing and that Mr. Williams was murdered prior to Appellant's trial. Our review of the record confirms that Appellant was represented by counsel at his preliminary hearing. N.T., 9/30/14, at 2. At the preliminary hearing, Mr. Williams was called as a witness by the Commonwealth and offered testimony spanning fourteen and one-half pages. **_Id_**. at 7-21. The

Commonwealth's direct examination of Mr. Williams consists of approximately four and one-half pages of testimony. *Id*. at 7-12. In addition, during direct examination, Appellant's defense counsel lodged an objection to a line of questioning posed by the Commonwealth pertaining to Mr. Williams's observation of the perpetrator pulling out a firearm. *Id*. at 11. Subsequently, defense counsel conducted a thorough cross-examination of Mr. Williams, consisting of approximately ten full pages of testimony, which was twice as long as the direct examination. *Id*. at 12-21.

Furthermore, our review reveals that, during the cross-examination, defense counsel inquired about the fact that Mr. Williams had been in the area of the shooting to sell drugs on the night of the incident, that Mr. Williams was an inmate at Dauphin County Prison while he was providing his testimony, and that Mr. Williams had been picked up on a parole violation. *Id*. at 13-14. Also, defense counsel thoroughly challenged Mr. Williams' ability to recollect the perpetrator of the shooting and other details of the night of the incident. *Id*. at 14-20. Defense counsel also questioned Mr. Williams about his previous acquaintanceship with Appellant. *Id*. at 19-20. Further, defense counsel inquired into the number of times that Mr. Williams had met with the assistant district attorney and police detectives prior to testifying at the preliminary hearing, and whether they had made any promises or offers to Mr. Williams. *Id*. at 20-21.

In addition, we have reviewed the transcript of the voluntary statement Mr. Williams gave to police on August 20, 2014, and conclude that his statement to the police with regard to the incident was substantially consistent with the testimony provided at the preliminary hearing. Commonwealth's Pretrial Exhibit 2. Also, having reviewed Mr. Williams's criminal history, we conclude that Appellant's defense counsel had ample opportunity to question the witness regarding his criminal record. Thus, Appellant's counsel had a full and fair opportunity to cross-examine Mr. Williams at the preliminary hearing, and the trial court properly admitted the evidence at trial.

We observe that, in support of his argument, Appellant relies upon our Supreme Court's decision in ***Commonwealth v. Bazemore***, 614 A.2d 684 (Pa. 1992). In ***Bazemore***, the defendant was charged with attempted burglary. ***Id***. at 685. The sole witness to the incident testified at the defendant's preliminary hearing. ***Id***. At the preliminary hearing, defense counsel was not aware that the witness had made a prior inconsistent statement to the police, that the witness had a criminal record, or that the Commonwealth was considering charging the witness for his own actions in connection with the incident. ***Id***. At trial, the witness asserted his Fifth Amendment right against self-incrimination and was unavailable to testify. ***Id***. The defendant argued that the witness's preliminary hearing testimony should not be admitted because the defendant did not have a full and fair

opportunity to cross-examine the witness. *Id*. at 687. Our Supreme Court held that, because defense counsel was unaware of the prior inconsistent statement, despite the fact that the Commonwealth had no obligation to provide it to the defense prior to the preliminary hearing, counsel was prevented from impeaching the witness, and there was no fair and full opportunity to cross-examine. *Id*. at 687. The Court focused on the vital importance of the witness's credibility as the sole witness to the alleged crime. *Id*. at 687-688. The Court emphasized that the Commonwealth disbelieved its own witness, as evidenced by the fact that the witness was later charged. The High Court found that to allow the Commonwealth to use testimony it disbelieved would result in miscarriage of justice. *Id*. at 688.

However, here Mr. Williams was not the sole witness to identify Appellant as the perpetrator of the crime. Unlike the situation in *Bazemore*, there is no indication that the Commonwealth disbelieved Mr. Williams's testimony or that his criminal record indicated he had a connection to the incident such that the admission of his testimony would result in miscarriage of justice. Because Mr. Williams was not the sole witness, his credibility was less vital to the case, and Appellant had the opportunity to present evidence to impeach that credibility. Our review of the law and the record supports the trial court's admission of the preliminary hearing testimony offered by Mr. Williams. Consequently, we discern no

error on the part of the trial court, and Appellant is not entitled to relief on this issue.

Appellant next argues that his sentence of life imprisonment without parole is illegal because he was only fifteen at the time of his crime. Appellant's Brief at 22-29. Appellant contends that his sentence amounted to cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution and the decisions of the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).

Pursuant to *Commonwealth v. Batts*, 66 A.3d 286, 294-296 (Pa. 2013) ("*Batts I*"), a juvenile may be sentenced to life without parole only if the trial court considers the appropriate age-related factors detailed in *Miller*. The trial court sentenced Appellant under a provision of the Crimes Code, 18 Pa.C.S. § 1102.1,[2] that was enacted after the decision in *Miller* to

_____

[2] Section 1102.1(d) provides as follows:

> **(d) Findings. —** In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:
>
> > 1)   The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's

*(Footnote Continued Next Page)*

provide that various findings be made by the trial court on the record prior to determining whether to impose a sentence of life without parole on a juvenile convicted of first-degree murder.

However, on June 26, 2017, during the pendency of this appeal, our Supreme Court decided a second appeal in **Commonwealth v. Batts**, 163

*(Footnote Continued)* ─────────────

> family. A victim impact statement may include comment on the sentence of the defendant.
>
> (2) The impact of the offense on the community.
>
> (3) The threat to the safety of the public or any individual posed by the defendant.
>
> (4) The nature and circumstances of the offense committed by the defendant.
>
> (5) The degree of the defendant's culpability.
>
> (6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.
>
> (7) Age-related characteristics of the defendant, including:
>
>> (i) Age.
>> (ii) Mental capacity.
>> (iii) Maturity.
>> (iv) The degree of criminal sophistication exhibited by the defendant.
>> (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.
>> (vi) Probation or institutional reports.
>> (vii) Other relevant factors.

A.3d 410 (Pa. 2017) ("*Batts II*"), in which it required the following additional safeguards beyond those set forth in Section 1102.1:

> [T]o effectuate the mandate of *Miller* and *Montgomery*, procedural safeguards are required to ensure that life-without-parole sentences are meted out only to "the rarest of juvenile offenders" whose crimes reflect "permanent incorrigibility," "irreparable corruption" and "irretrievable depravity," as required by *Miller* and *Montgomery*. . . . [W]e recognize a presumption against the imposition of a sentence of life without parole for a juvenile offender. To rebut the presumption, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the juvenile offender is incapable of rehabilitation.

*Id*. at 415-416. In *Batts II*, the Supreme Court vacated the appellant's sentence and remanded for a new sentencing hearing. *Id*. at 460.

The trial court did not have the benefit of our Supreme Court's decision in *Batts II*, which established the rebuttable presumption against a sentence of life without parole for a juvenile offender. To its credit, the Commonwealth has acknowledged that there is a presumption against sentencing a juvenile to life in prison without the possibility of parole under *Batts II*, and it has requested that this Court remand for resentencing. Commonwealth's Brief at 16. Accordingly, we vacate Appellant's judgment of sentence and remand for further proceedings consistent with *Batts II*.

In his third issue, Appellant argues that the trial court abused its discretion in sentencing him to a term of life without parole. Appellant's Brief at 30-32. Appellant contends that the sentence was "excessive and unreasonable and constitutes too severe a punishment in light of the

- 14 -

rehabilitative needs of the Appellant and where the punitive measures inherent in this sentencing scheme could have been accomplished with the imposition of a lesser sentence pursuant to the mandatory minimum under the statu[t]e 18 Pa.C.S.A. § 1102.1." *Id*. at 30. Due to our disposition of Appellant's previous issue challenging the sentence imposed in this matter, we need not address the instant issue raised by Appellant.

Appellant last argues that the trial court erred in failing to suppress the photographic-array identifications of three witnesses. Appellant's Brief at 32-35. Essentially, Appellant contends that his right to have counsel present during the presentation of a photo array subsequent to his arrest was violated by the police and that the photographic array was unduly suggestive. *Id*. at 34-35.

As we previously mentioned, the admission or exclusion of evidence is committed to the sound discretion of the trial court, and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. *Laird*, 988 A.2d at 636. Under the federal Constitution, after the filing of formal charges, a suspect becomes an accused, and the Sixth Amendment right to counsel attaches.[3] *Maine v. Moulton*, 474 U.S. 159, 170 (1985).

---

[3] The Sixth Amendment to the United States Constitution states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The constitutional right to counsel provided under the Sixth Amendment of the United States Constitution is coterminous with the right to counsel

*(Footnote Continued Next Page)*

In Pennsylvania, however, our courts have seen fit to hold that the right to Sixth Amendment protection adheres at the time of arrest. **Commonwealth v. Karash**, 518 A.2d 537, 541 (Pa. 1986); **Commonwealth v. Rishel**, 582 A.2d 662, 665 (Pa. Super. 1990). Moreover, this Commonwealth has long recognized that, subsequent to an arrest, "[a] suspect has the right to be represented by counsel at a photograph array." **Commonwealth v. Sanders**, 551 A.2d 239, 246 (Pa. Super. 1988) (citing **Commonwealth v. Whiting**, 266 A.2d 738 (Pa. 1970), *cert denied*, 400 U.S. 919 (1970)). This Court has explained that "in Pennsylvania, the right to counsel at a photographic array does not attach when the suspect is in custody for a different offense than that for which the array has been compiled." **Commonwealth v. Blassingale**, 581 A.2d 183, 190 (Pa. Super. 1990) (citing **Commonwealth v. McKnight**, 457 A.2d 931 (Pa. Super. 1983)).

The trial court presented the following rationale in concluding that this claim lacked merit:

> Here, [Appellant] does not establish that he was in custody for these charges. To the contrary, Officer Cook testified that [Appellant] had a juvenile probation warrant from escaping from placement.[9] N.T. Suppression at 12. Officer Cook also testified that he wanted to speak to [Appellant] to see if he had any information about a homicide that recently took place. **Id**. At

*(Footnote Continued)* ———————————

Article I, Section 9 of the Pennsylvania Constitution. **Commonwealth v. D'Amato**, 856 A.2d 806, 821 n.14 (Pa. 2004).

this point, he is merely a suspect in the homicide and has not been [formally] charged with anything. *Id*. at 14. [Appellant] was [formally] charged sometime in the afternoon on August 20th, 2014 *after* Freddie Williams, Nicole Coleman, and David Lee were shown photograph[ic] arrays. N.T. Suppression at 14-16. As [Appellant] was arrested on a separate charge (warrant for escaping from transport) and was not [formally] charged until after all photo array identifications were complete, this issue is without merit.

[9] [Appellant] had actually escaped from transport.

Trial Court Opinion, 2/7/17, at 5 (emphasis in original).

Our review of the record reflects that the murder in this case was committed at approximately 5:00 a.m. on August 19, 2014. N.T., 2/22/16, at 11. Appellant was taken into custody at approximately 1:00 p.m. on August 19, 2014, pursuant to an active warrant from juvenile probation for escape, not for the instant murder. *Id*. at 11-12. Police showed one photographic array to Nicole Coleman on August 19, 2014, and she identified Appellant and another gentleman as possible suspects. *Id*. at 14-15. In the late morning or early afternoon of August 20, 2014, the police compiled a second photographic array containing a more recent photograph of Appellant and presented it to Ms. Coleman, David Darnel Lee, and Freddie Williams. *Id*. at 15-16. Appellant was formally charged by criminal complaint with the offenses in this case at approximately 3:30 or 4:00 p.m. on August 20, 2014, after the photographic array was presented to the three witnesses. *Id*. at 14. Therefore, Appellant did not have a right to counsel at the

photographic line-up presented to the witnesses earlier that day. Hence, Appellant's claim in this regard lacks merit.

Appellant also argues that the photographic array was unduly suggestive, thus requiring that the photographic-array identifications and subsequent identifications should have been suppressed. Appellant's Brief at 35. Specifically, Appellant asserts that he was the only person wearing green in the photographic line-up, and that he had a "darker complexion" than the other individuals in the array. *Id*.

With regard to a claim that a photographic array is unduly suggestive, our Supreme Court has instructed that a photographic identification is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. *Commonwealth v. DeJesus*, 860 A.2d 102, 112 (Pa. 2004) (citing *Commonwealth v. Johnson*, 668 A.2d 97 (Pa. 1995)).

> 'Whether an out-of-court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances.' *Commonwealth v. Carson*, 741 A.2d 686, 697 (1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). We will not suppress such identification "unless the facts demonstrate that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

*Commonwealth v. Burton*, 770 A.2d 771, 782 (Pa. Super. 2001). The variance between the photographs in an array does not necessarily establish grounds for suppression of a victim's identification. *Id*. "Photographs used

- 18 -

in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Commonwealth v. Fisher*, 769 A.2d 1116, 1126 (Pa. 2001). "[E]ach person in the array does not have to be identical in appearance." *Burton*, 770 A.2d at 782. The photographs in the array should all be the same size and should be shot against similar backgrounds. *Commonwealth v. Thomas*, 75 A.2d 921 (Pa. Super. 1990).[4]

We have thoroughly reviewed the photographic array in question. We observe that the array contains eight color photographs of young men, appearing to be of the same race and close in age, which were taken in front of similar backgrounds. The photographs were practically identical in size and shape. Of the eight photographs, four showed men wearing white tee-shirts, one contained a man wearing a light pink tee-shirt, one depicted a man wearing a light grey tee-shirt, one contained a man wearing a dark`

---

[4] In addition, we recognize that our courts have affirmed the denial of suppression even where the photograph in contention bears some distinguishing feature not shared by the remaining photographs. *See Fisher*, 769 A.2d at 1126-1127 (finding array not unduly suggestive where witnesses described the suspect as a light-skinned African-American male with freckles and a goatee, while only six of the eight pictures in the line-up showed men with goatees, and only the picture of the appellant showed a man with freckles); *Commonwealth v. Blassingale*, 518 A.2d 183, 189-190 (Pa. Super. 1990) (concluding array was not impermissibly suggestive because, even though defendant was the only subject who had a glass eye, two other subjects had unusual eye characteristics); *Commonwealth v. Monroe*, 542 A.2d 113, 115 (Pa. Super. 1988) (concluding array was not impermissibly suggestive, even though defendant was the only bald man pictured, because several other subjects had very short haircuts).

blue polo-type shirt that was completely buttoned to the collar, and in Appellant's photograph he was wearing a light green tee-shirt. While the witnesses may have indicated that the perpetrator of the shooting was wearing a green hooded sweatshirt, we cannot conclude that the photographic array was unduly suggestive, thereby creating a substantial likelihood of misidentification simply because Appellant happened to be wearing a light green article of clothing in his photograph.

Moreover, our review reveals that the young men in the photographs all had similar skin complexions. To the extent that one or possibly two of the photographs may contain men having a slightly darker skin complexion than the remaining six, it is our observation that neither of those two photographs was of Appellant. Thus, we conclude that the photographic array was not unduly suggestive for these reasons. Accordingly, Appellant's claim that the identifications should have been suppressed because the photographic array was unduly suggestive lacks merit.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2017

- 20 -